UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLAUDIA NCHUO CHU,

    Petitioner,

v.                                                       Case No. 1:26-cv-275-DHU-JHR

TODD M. LYONS, in official capacity,
Acting Director of ICE, KRISTI NOEM,
in official capacity, Secretary of the U.S.
Department of Homeland Security;
PAMELA BONDI, in official capacity, Attorney
General of the United States,

    Respondents.

**ORDER GRANTING PETITIONER'S EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER**

    THIS MATTER is before the Court on Petitioner's Emergency Motion for a Temporary Restraining Order ("TRO"). Doc. 4. For the reasons set forth below, Petitioner's request for a temporary restraining order is **GRANTED**.

**I.
PROCEDURAL BACKGROUND**

    In January 2026, Petitioner was detained by immigration officials in Minnesota while driving to work. Doc. 1 at ¶ 39. She was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where she remains in custody. *Id.* at ¶ 10.

    On February 4, 2026, Petitioner filed a verified Petition for Writ of Habeas Corpus ("Petition") with this Court. In the Petition, Petitioner seeks immediate release from immigration custody or a constitutionally adequate bond hearing, *id.* at 14, alleging that the Government is detaining her unlawfully in violation of the Immigration and Nationality Act ("INA") and the Due

1

Process Clause of the Fifth Amendment, *id.* at ¶¶ 52-58. Specifically, Petitioner argues that the Government is wrongfully detaining her under 8 U.S.C. § 1225(b), which mandates detention for noncitizens in removal proceedings who are "seeking admission" to the country. *Id.* at ¶¶ 53-54. Instead, Petitioner asserts she is properly subject to the discretionary detention provisions of 8 U.S.C. § 1226(a). *Id.* Moreover, Petitioner alleges that the Due Process Clause entitles her to a pre-deprivation hearing before the Government can revoke Petitioner's release and re-detain her. *Id.* at ¶¶ 56-58. Because Respondents did not provide such a hearing before Petitioner's re-detention, Petitioner argues she should be immediately released. *Id.* at 11.

Respondents were served with the Petition on February 5, 2026, Doc. 3, and the next day, this Court ordered the Government to show cause why the Petition should not be granted within ten business days of service, Doc. 5.

On February 5, 2026, Petitioner filed an Emergency Motion for a Temporary Restraining Order, asking this Court to enjoin respondents from continuing to detain her during the pendency of her Habeas Petition. Doc. 4 at ¶ 1. In support of the Motion, Petitioner states that she has surgery scheduled for February 18, 2026, to remove fibroids, which cause severe pain, heavy bleeding, and could increase morbidity if not addressed. *Id.* The motion argues that Petitioner's immediate release from custody would "maintain the status quo" during the pendency of the case. *Id.* at 5.

On February 10, 2026, Respondents submitted a response to Petitioner's motion for TRO. Doc. 10. In it, the Government articulates its position that Petitioner is subject to mandatory detention under § 1225(b), pursuant to *Matter of Yajure Hurtado*. *Id.* at 2 (citing 29 I & N Dec. 216, 228 (BIA 2025)). Respondents acknowledge, however, that this Court has reached the opposite conclusion in cases containing substantially similar facts as those before the Court in this case. *Id.* (citing *Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026);

2

*Vega Uribe v. Noem*, 2026 WL 127621, at *1 (D.N.M. Jan. 16, 2026)). The response does not address Petitioner's argument that she was entitled to a hearing before being re-detained.

## II.
## FACTUAL FINDINGS

Petitioner supported her Motion for TRO with the facts and exhibits provided in her verified Petition and the Motion itself. *See* Docs. 1, 4. Respondents did not provide any information to dispute the factual allegations contained in the Petition and Motion. *See* Doc. 10 at 2. Accordingly, at this stage of the litigation, based on the facts provided in Petitioner's verified Petition and Motion for TRO, the Court makes the following initial findings of fact concerning Petitioner's detention:

1. Petitioner Claudia Nchuo Chu is a citizen of Cameroon. Doc. 1 at ¶ 10. She entered the United States without inspection in or around June of 2023 and was detained shortly thereafter. *Id.* at ¶¶ 10, 37; *see also* Doc. 4 at ¶ 3.

2. Respondents released Petitioner on her own recognizance with a Notice to Appear in Immigration Court. *Id.* She relocated to Minnesota, timely applied for asylum in October 2023, and fully complied with DHS's procedures for asylum seekers. *Id.* at ¶ 38; *see also* Doc. 4 at ¶ 4.

3. In January 2026, Petitioner was detained by immigration officials in Minnesota after they followed her car while she drove to work. Doc. 1 at ¶ 39; Doc. 4 at ¶ 5. She was then transferred to the Otero County Processing Center in Chaparral, New Mexico. Doc. 1 at ¶ 10.

4. Petitioner is scheduled for surgery to address severe fibroids on February 18, 2026. Doc. 4 at ¶ 6 (citing Doc. 4-1). Absent prompt relief from this Court, Petitioner will most likely miss her surgery. Doc. 1 at ¶ 39.

## III.
## LEGAL STANDARD

A temporary restraining order "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (citation omitted).

To obtain a temporary restraining order, a petitioner "must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in her favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh in [her] favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F.Supp.3d 1129, 1139 (10th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding the irreparable harm factor, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quotation marks and citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the Government is the opposing party. *Nken*, 556 U.S. at 435.

IV.
DISCUSSION

**A. Petitioner is Likely to Succeed on the Merits.**

1. <u>Due Process Claim</u>

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining her without first providing her with a pre-deprivation hearing. Doc. 1 at ¶ 58; *see also* Doc. 4 at ¶ 10. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

a. <u>Petitioner Possesses a Protected Liberty Interest.</u>

This Court first finds that there is a substantial likelihood that Petitioner will be able to show that she has a protected liberty interest in her release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled her "to do a wide range of things," including to work, seek medical care, and "form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody two-and-a-half years ago and has lived in Minnesota ever since. Doc. 1 at ¶ 10.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, --F.Supp.3d--, 2025 WL 2941217, at *3 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by ORR demonstrated a substantial likelihood of success on claim that he possesses a protected liberty

5

interest in release from detention); *Cuya-Priale v. Castro*, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

        b.   A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that she has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for two-and-a-half years before being re-detained by ICE, during which time her interest in release certainly grew stronger as she worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

6

Her private interest in freedom from detention is therefore substantial. *See* Doc. 1 at ¶ 57; Doc. 4 at ¶ 10.

With respect to the second *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. *See* Doc. 4 at ¶ 5. A pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining her. *Id.*

Finally, the Court finds a substantial likelihood that Petitioner can show that the third *Mathews* factor favors her as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and cost of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that she was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest and that due process requires a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of her due process claim.

2. <u>Violation of the INA</u>

Petitioner also argues that Respondents violated the INA by detaining her under 8 U.S.C. § 1225 without the possibility of a bond hearing. Doc. 1 at ¶¶ 53-54. She asserts she is not subject to mandatory detention and instead should be classified under § 1226(a) and entitled to a bond

7

hearing, as someone who has been residing in the United States for some time. *Id.*; *see also* Doc. 4 at ¶ 11.

This Court finds Petitioner has established a substantial likelihood of success on the merits of this claim as well. At the time that Petitioner was re-detained, she was not seeking admission to the United States. She was in Minnesota on her way to work. Doc. 1 at ¶ 39. Petitioner had also not just arrived, or even recently arrived, to the United States. She had been in the United States for two-and-a-half years, after being released from immigration custody on her own recognizance after she first entered the country. *Id.* at ¶ 10. In line with previous decisions of this Court, Petitioner's proper classification is likely under the discretionary detention provisions of § 1226. *See Requejo Roman v. Castro*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *Salazar v. Dedos*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025).

**B.  Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

The Court next finds that Petitioner has demonstrated that her detention has caused and will continue to cause irreparable harm. First, it is well-established that "the infringement of a constitutional right" is enough to show irreparable harm. *Free the Nipple-Fort Collins*, 916 F.3d at 805. Having found a substantial likelihood of success on the merits of Petitioner's due process claim, "no further showing of irreparable injury" is necessary. *Id.*

Even if the constitutional injury were not enough, Petitioner has nevertheless shown that her continued detention poses the risk of irreparable harm to her health. Petitioner is scheduled for surgery to address severe fibroids later this month, which her doctor has stated is "medically necessary to relieve her pain, control bleeding, and prevent further complications that could pose serious risks to her health and safety." Doc. 4 at ¶ 13; Doc. 4-1 at 6. "Delay in care," according to her doctor, "may result in progression of symptoms, increased morbidity, and possible emergency

intervention, which would carry higher risk and cost." *Id.* This, too, demonstrates the irreparable harm Petitioner faces in the absence of immediate relief.

**C. The Balance of Equities and Public Interest Weigh in Petitioner's Favor.**

When the Government is the party opposing the temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. The Court finds that the balance of equities and public interest weigh in Petitioner's favor. Any burden on Respondents to release Petitioner from custody and provide a pre-deprivation hearing is minimal compared to the harm that Petitioner faces due to her continued detention. It is also not in the public's interest to allow unexplained and/or unlawful detention.

## V.
## CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to her re-detention by ICE. Accordingly, **IT IS ORDERED** that:

1. Petitioner's request for a temporary restraining order is **GRANTED**;
2. Respondents are **ORDERED** to release Petitioner within twenty-four hours of this Order;
3. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger to her community or a flight risk; and
4. This order, for good cause shown, shall remain in effect until resolution of the merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____
**HONORABLE DAVID HERRERA URIAS**
**UNITED STATES DISTRICT JUDGE**